**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| MICHAEL HAR-NOY, | |
| Plaintiff, | |
| v. | C.A. No. 2026-0305-DG |
| MIRROR BIOLOGICS, INC., | |
| Defendant. | |

**ORDER RESOLVING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON ENTITLEMENT TO ADVANCEMENT**

**WHEREAS:**

    A.    This is an advancement action.[1]

    B.    Plaintiff Michael Har-Noy is the founder and a former director of defendant Mirror Biologics, Inc. ("Mirror USA").[2] Har-Noy also maintains that he is an officer and the sole director of Mirror Biologics, Ltd. ("Mirror Israel"), an Israeli subsidiary of Mirror USA.[3]

---

[1] *See* Verified Compl. for Advancement ("Compl."), Dkt. 1.

[2] *Id.* ¶ 8; *see* Ans. and Affirmative and Other Defenses of Def. Mirror Biologics, Inc. to Verified Compl. for Advancement ("Ans."), Dkt. 9 ¶ 8 (admitted).

[3] Compl. ¶¶ 8, 11. Har-Noy claims he served in this capacity at "the request of Mirror [USA]." *Id.* ¶ 11.

C.     Har-Noy is a defendant in a civil lawsuit brought by Mirror USA in Israel ("Underlying Proceeding").[4]

D.     In the Underlying Proceeding, Mirror USA alleges that Har-Noy, through his control of Mirror Israel and an affiliated entity, "exploited and is trying to exploit his access and actual control of what is being done with the assets of [Mirror Israel] in a way that damages [Mirror Israel] and its shareholders."[5]     Mirror USA seeks an order from the Israeli Court "remov[ing] [Har-Noy] from all his positions" with Mirror Israel for this purported fraudulent conduct and breaches of fiduciary duty.[6]

E.     Specifically, Mirror USA alleges that Har-Noy "exploited . . . his power in Mirror Israel to advance his personal interest[,]" to harm Mirror USA, and to "fortify and protect his power" while doing so.[7]   Mirror USA also asserts that this conduct amounted to a "breach of the duties of care, trust, and fairness[.]"[8]

F.     The Underlying Action also alleges that Mirror USA attempted to amend Mirror Israel's articles of incorporation, but Har-Noy acted to

---

[4] Compl. Ex. C ("Isr. Compl.").

[5] Isr. Compl. at A.

[6] *Id.* at A.

[7] *Id.* ¶ 89.

[8] *Id.* ¶ 92.

prevent Mirror USA from doing so through a purportedly fraudulent resolution of the board of directors of Mirror Israel.[9] Mirror USA maintains that it later replaced Mirror Israel's articles of incorporation and used the amended articles to terminate Har-Noy from his position.[10] Mirror USA claims that, despite his termination, Har-Noy continues to present himself as a director of Mirror Israel to Mirror Israel employees, suppliers, customers, and service providers, among other third parties.[11]

G.      Mirror USA also contends that its "claim deals solely with the conduct of Har-Noy as a shareholder and (former) officer [of] Mirror Israel."[12]

H.      Between December 30, 2025, and January 19, 2026, after Har-Noy's alleged termination from Mirror Israel and the alleged amendment of Mirror Israel's articles of incorporation, Har-Noy "received a series of three letters from Mirror [USA]'s Israeli counsel involving then[-]threatened litigation" against him for the above alleged conduct.[13]

---

[9] *Id.* ¶¶ 50–59

[10] *Id.* ¶ 58.

[11] *Id.* ¶¶ 58–59.

[12] *Id.* ¶ 85.

[13] Compl. ¶¶ 15–16; Compl. Ex. D at *7–13 (letters).

I.     By letter dated February 9, Har-Noy sent a demand for mandatory advancement of his fees and expenses relating to the then-threated Israeli litigation.[14]

J.     On February 12, Mirror USA filed a motion against Har-Noy for preliminary injunctive relief and other temporary remedies "to protect Mirror Israel's assets[.]"[15]

K.     On February 16, Mirror USA denied Har-Noy's demand for advancement because "Har-Noy is not threated to be made a party to [the Underlying Action] by reason of the fact that he is serving" as a director or officer at Mirror USA's request, and, therefore, "Har-Noy is not entitled to advancement[.]"[16]

L.     On February 22, Mirror USA initiated the Underlying Action.[17]

M.     On March 4, Har-Noy filed the Verified Complaint for Advancement.[18] The parties stipulated to a schedule for briefing Har-Noy's motion for summary judgment on the issue of Har-Noy's entitlement to

---

[14] Compl. Ex. D at *1.

[15] Compl. ¶ 19; *see id.* Ex. B ("Isr. Mot.").

[16] Compl. Ex. E at 2.

[17] *See* Isr. Compl.

[18] Dkt. 1.

advancement under Mirror USA's bylaws and payment of fees he incurred in bringing this advancement action.[19]

N.      The Court heard oral argument on June 9 and took the matter under advisement on that date.[20]

NOW, THEREFORE, **IT IS ORDERED**, this 11th day of August, 2026, that:

1.      Har-Noy moved for summary judgment under Court of Chancery Rule 56.[21]  Under this rule, "the Court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Ct. Ch. R. 56(a).[22]

2.      "The [movant has] the initial burden of demonstrating the absence of a material factual dispute.  If the [movant meets] their burden, the burden shifts to the nonmovant to present some specific, admissible evidence that there is a genuine issue of fact for a trial."[23]

---

[19] Dkts. 7–8.

[20] Dkt. 31.

[21] *See* Dkts. 13–15.

[22] Court of Chancery Rule 56 was amended effective June 1, 2026.  *See* Order Amending Rules 46, 54–65.1, 67, 69–72, 77–78, 81–83, 85–88, and 100 of the Court of Chancery Rules, https://courts.delaware.gov/forms/download.aspx?id=328858. The revisions are intended to align Rule 56 "to the extent possible" with its counterpart in the Federal Rules of Civil Procedure, and "[e]xcept as noted, no substantive change in the interpretation of the rule [is] intended, and prior Delaware authorities interpreting the rule remain applicable."  *Id.* at 8.

[23] *Ogus v. SportTechie, Inc.*, 2023 WL 2746333, at *9 (Del. Ch. Apr. 3, 2023) (citation modified).

3. "Summary judgment is an appropriate way to resolve advancement disputes because 'the relevant question turns on the application of the terms of the corporate instruments setting forth the purported right to advancement and the pleadings in the proceedings for which advancement is sought.'"[24] "In determining whether to award advancement, the [c]ourt will look to the plain meaning of the advancement provisions in the governing instruments."[25]

4. Har-Noy asserts a right to mandatory advancement under Section 9.1(c) of Mirror USA's bylaws ("Bylaws").[26] Section 9.1(c) states, in relevant part:

> The corporation shall advance to any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he is or was a director or officer, of the corporation, or is or was serving at the request of the corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, prior to the final disposition of the

---

[24] *Rhodes v. bioMerieux, Inc.*, 2024 WL 669034, at *7 (Del. Ch. Feb. 19, 2024) (quoting *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Hldg. Co., LLC*, 853 A.2d 124, 126–27 (Del. Ch. 2004)).

[25] *Id.* at *7 (citation modified); *Gilbert v. Unisys Corp.*, 2024 WL 3789952, at *8 (Del. Ch. Aug. 13, 2024).

[26] *See* Pl.'s Opening Br. in Supp. of its Mot. for Summ. J. for Advancement ("OB"), Dkt. 11 at 4–6; Compl. ¶ 14. The Bylaws are attached as Exhibit A to the Complaint. *See* Compl. Ex. A.

proceeding, promptly following request therefor, all expenses incurred by any director or executive officer in connection with such proceeding . . . .[27]

5.      Section 9.1(j) defines certain terms of art used in the advancement provision.[28]   It defines "proceeding" as including "without limitation, the investigation, preparation, prosecution, defense, settlement, arbitration and appeal of, and the giving of testimony in, any threatened, pending or completed action, suit or proceeding, whether civil criminal, administrative or investigative."[29]

6.      "Expenses" are broadly defined to "include, without limitation, court costs, attorneys' fees, witness fees, fines, amounts paid in settlement or judgment and any other costs and expenses of any nature or kind incurred in connection with any proceeding."[30]

7.      Section 9.1(a) states that the term "executive officers" as used in the section "shall have the meaning defined in Rule 3b-7 promulgated under the" Securities Exchange Act of 1934,[31] which defines "executive officer" as

---

[27] Bylaws § 9.1(c).

[28] *See id.* § 9.1(j).

[29] *Id.* § 9.1(j)(1).  The Bylaws mandate that the term "proceeding . . . be broadly construed[.]" *Id.*

[30] *Id.* § 9.1(j)(2).

[31] 15 U.S.C. §§ 78a.–78rr.

an entity's "president, any vice president . . . in charge of a principal business unit, division[,] or function . . . any other officer who performs a policy making function or any other person who performs similar policy making functions for" the entity.[32]

8.      Applying the foregoing definitions to Section 9.1(c), a director of Mirror USA, or a person serving as a director or executive officer of another entity at Mirror USA's request, has a mandatory right to advancement if they are made a party to any proceeding by reason of the fact they are or were a director of Mirror USA or serving as a director or executive officer of another entity at Mirror USA's request.

9.      The provision is unambiguous.  Under the plain language of the Bylaws, Har-Noy is a covered person.  Har-Noy was appointed to Mirror Israel's board and as its CEO by "virtue of his position in Mirror" USA.[33] Delaware law is clear: the act of using one's control of a subsidiary to elect or appoint a person to the board or as an officer of such subsidiary "must amount to a 'request' in the eyes of the law."[34]

---

[32] 17 C.F.R. § 240.3b-7.

[33] Isr. Compl. ¶ 28.

[34] *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 85 (Del. 1998).  The Supreme Court's holding in *VonFeldt* emphasizes that the subsidiary in that company was "wholly-owned[;]" I see no meaningful difference between owning 99.9%—the percentage of shares Mirror USA holds in Mirror Israel—and 100%.  *Cf. Gilbert*, 2024 WL 3789952, at *15–16; *Zaman v. Amedo Hldgs., Inc.*, 2008 WL 2168397, at *19 (Del.

10.	Mirror USA makes three arguments in opposition to Har-Noy's claim for advancement.[35]

11.	First, Mirror USA contends that the advancement provision Har-Noy invokes was never formally adopted under Sections 242 and 245 of the DGCL.[36]  Therefore, it argues, Har-Noy cannot get advancement because the provision never took effect.  This argument fails.

12.	Mirror USA admitted in its answer that the Bylaws Har-Noy attached to the Complaint are its Bylaws.[37]  Mirror USA cannot amend its pleading through its brief to take back "a conclusive and binding" representation to the Court.[38]

13.	Second, Mirror USA maintains that Har-Noy is not a party to the Underlying Action because the alleged conduct occurred after Har-Noy was

---

Ch. May 23, 2008) ("Although the facts in this case are different, the fundamental reasoning of [*VonFeldt*] applies.").

[35] *See generally* Br. of Def.'s Mirror Biologics, Inc. in Opp. to Mot. of Pl. Michael Har-Noy for Summ. J. ("AB"), Dkt. 14.

[36] AB at 20.

[37] *See* Ans. ¶ 3.

[38] *E.g.*, *Merritt v. United Parcel Serv.*, 956 A.2d 1196, 1201–02 (Del. 2008); *see Delta Eta Corp. v. City of Neark*, 2023 WL 2982180, at *20 (Del. Ch. Feb. 2, 2023) ("[A]rguments in briefs do not serve to amend the pleadings.").

terminated from Mirror Israel.[39]  Mirror USA's reasoning here is contradicted by its own claims in the Underlying Action.

14.    Mirror USA alleged, among other things, that its claim "deals solely with the conduct of Har-Noy as a shareholder and (former) [Mirror Israel] officer[;]" that "Har-Noy exploited his power and control" in Mirror Israel to "advance his personal interests[;]" that Har-Noy "acted (and pretends to continue to act) as a company officer in Mirror Israel[;]" that Mirror Israel has "the right to dismiss Har-Noy from his term as a director in Mirror Israel[;]" and that Har-Noy owed Mirror USA fiduciary duties from "all his positions" in Mirror Israel[.]"[40]  Mirror USA specifically asked the Israeli Court to "order, declare, and rule that the breaches of said [fiduciary] duties justify and require . . . the dismissal of Har-Noy from all his management positions" at Mirror Israel.[41]

15.    Mirror USA's argument fails because Har-Noy's status as an officer and director of Mirror Israel is in dispute in the Underlying Action, and Mirror USA's allegations clearly and unambiguously implicate Har-Noy's official corporate capacity and the exercise of corporate powers.

---

[39] AB at 22.

[40] Isr. Compl. ¶¶ 85, 89, 96, 97.

[41] *Id.* ¶ 99.2.

- 10 -

16. Third, Mirror USA contends that ordering advancement would violate Israeli law.[42] This argument is irrelevant.

17. "The internal affairs doctrine applies to those matters that pertain to the relationships among or between the corporation and its officers, directors, and shareholders."[43] "The internal affairs doctrine requires that the law of the state of incorporation should determine issues relating to internal corporate affairs."[44]

18. Har-Noy seeks advancement from a Delaware corporation, formed under and governed by Delaware law, pursuant to said corporation's Bylaws, which expressly incorporate Section 145 of the DGCL.[45] The internal affairs doctrine applies because the Underlying Action pertains to the relationship between Mirror USA, and Har-Noy, relating to his use of corporate power in his current or former positions with Mirror Israel that he obtained by virtue of his positions in Mirror USA. Israeli law does not control the internal affairs of a Delaware corporation, nor does it bind this Court in deciding issues of Delaware law. I thus reject Mirror USA's contention that

---

[42] AB at 24.

[43] *E.g.*, *VantagePoint Venture P'rs 1996 v. Examen, Inc.*, 871 A.2d 1108, 1113 (Del. 2005) (citation omitted).

[44] *Id.* (citation omitted).

[45] *See* Bylaws §§ 9.1(a), 9.1(c).

- 11 -

it should be relieved from its self-imposed obligation[46] to advance Har-Noy's legal fees and expenses.[47]

## Fees-on-Fees and Interest

19.     Har-Noy is entitled to fees-on-fees for his success on the merits of his advancement suit.[48]  Har-Noy  is also entitled to prejudgment interest at the legal rate.[49]  Section 9.1(d) of the Bylaws states that when a covered person brings an action to enforce their rights, "if successful in whole or in part, [he] shall also be paid the expense of prosecuting the claim" for advancement.[50]

20.     "A party from whom advancement is improperly withheld 'is entitled to interest computed from the date of demand,' defined as the date on

---

[46] "The Delaware General Corporation Law permits a corporation to advance the costs of litigation to a director.  This allowance is permissive, not mandatory.  Thus, a corporation is free to limit the terms of advancement and even preclude advancement entirely." *Brooks-McCollum v. Emerald Ridge Serv. Corp.*, 2004 WL 1752852, at *2 (Del. Ch. July 29, 2004).

[47] *E.g., Armstrong v. Pomerance*, 423 A.2d 174, 177 (Del. 1980); *RSUI Indemnity Co. v. Murdock*, 248 A.3d 887, 900–01 (Del. 2021) (applying Delaware law to an indemnification insurance policy entered into by a corporation under the powers granted in Section 145).

[48] *See Leiske v. Kidd*, 2026 WL 265493, at *5 (Del. Ch. Feb. 2, 2026) ("Under settled Delaware law, fees-on-fees are awarded to a successful plaintiff in an advancement action to prevent the victory from being [P]yrrhic.") (citing *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561–62 (Del. 2002)).

[49] *See* 6 *Del. C.* § 2301(a).

[50] Bylaws § 9.1(d).

which the party 'specified the amount of reimbursement demanded and produced his written promise to pay.'"[51]

21.  This is a Report under Court of Chancery Rule 144. Under Rule 144(d)(2) and the Chancellor's assignment letter,[52] any party wishing to take exception to this Report must file a notice of exceptions by August 14, 2026.

22.  If no exceptions are taken by August 14, or the Chancellor or a Vice Chancellor affirms this Report after exceptions, then within five business days of the expiration of the exceptions deadline or the issuance of an affirming decision from a constitutionally appointed officer of this court, the parties must meet and confer to determine the fees and pre-judgment interest Har-Noy is owed for successfully prosecuting this action and submit a proposed order implementing this decision that includes a plan for resolving fee disputes similar to the plan laid out in *Danenberg v. Fitracks, Inc.*[53]

/s/ Danielle Gibbs
Magistrate in Chancery

---

[51] *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1058 (Del. Ch. 2014) (quoting *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 826 & n.10 (Del. 1992)).

[52] Dkt. 6.

[53] 58 A.3d 991, 1003–04 (Del. Ch. 2012).